UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

GILDA KOHAN,

       Plaintiff,

       v.

KK GREAT NECK 2470, LLC d/b/a Gardens at Great Neck,

       Defendant.
_____

CASE NO.: 9:23-cv-00568

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, GILDA KOHAN, by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure and all other applicable rules, statutes, regulations and governing legal authorities, hereby files this Complaint and sues KK GREAT NECK 2470, LLC, a foreign limited liability company, d/b/a Gardens at Great Neck, (hereinafter "Gardens at Great Neck" and/or "Defendant") for injunctive relief, attorneys' fees and costs, including but not limited to disbursements, court expenses and fees, pursuant to 42 U.S.C. § 12181 *et seq*. (hereinafter "AMERICANS WITH DISABILITIES ACT" or "ADA") and the ADA Accessibility Guidelines 28 C.F.R. Part 36 (hereinafter "ADAAG"), and for injunctive relief and damages, pursuant to the NEW YORK STATE HUMAN RIGHTS LAW ("NYSHRL") and alleges:

### JURISDICTION AND VENUE

1. This is an action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*. This Court is vested with original jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and § 1343. This Court

has supplemental jurisdiction over Plaintiff's state law claims that arise out of the same nucleus of facts and circumstances as the subject federal claims.

2. Venue is proper and lies in this Court pursuant to 28 U.S.C. §1391 (B) in that the transaction or occurrence giving rise to this lawsuit occurred in the County of Nassau, State of New York.

3. The remedies provided by NYSHRL against discrimination are not exclusive and state administrative remedies that do not need to be exhausted in connection with a lawsuit commenced pursuant to the Federal Civil Rights Act.

## THE PARTIES

4. At all times material hereto, Plaintiff, GILDA KOHAN, was and is over the age of 18 years, *sui juris*, and is resident of the County of Nassau, State of New York.

5. Mrs. Kohan has at all material times suffered from a "qualified disability" as defined pursuant to Title III under the ADA; Plaintiff suffers from a form of adult-onset muscular dystrophy known as GNE myopathy, which requires her to utilize a motorized wheelchair for mobility of all day-to-day activities. Plaintiff also has a physical disability within the meaning of the NYSHRL.

6. The Defendant, KK GREAT NECK 2470, LLC, a foreign limited liability company, d/b/a Gardens at Great Neck ("Gardens at Great Neck"), is authorized to conduct, and is conducting business within the State of New York.

7. Upon information and belief, Gardens at Great Neck is the lessor and/or operator of the real property, and the owner of the improvements where the Subject Premises is located, which is the subject of this lawsuit, the facility commonly referred to as Gardens at Great Neck

located at or around 50 Great Neck Road, Great Neck, New York 11021, (hereinafter and heretofore referred to as the "Subject Premises").

8. The Subject Premises is a place of "public accommodation" as that term is defined under the ADA; specifically, the Subject Premises is operated as a multi-purpose shopping center.

9. In the twelve months prior to the commencement of this action, Plaintiff visited the Subject Premises on numerous occasions to shop, dine and/or bank at several businesses that operate places of public accommodation within Gardens at Great Neck (the "Businesses")[1]. Despite this, Plaintiff was denied full access to, and full enjoyment of the facilities at the Subject Premises and/or the accommodations offered to the public therein in that Plaintiff was restricted and limited by her disabilities due to the Subject Premise's failure to provide the necessary and required accessible parking spots, access aisles for all accessible designated parking spots, curb cuts for all accessible designated parking spots (that do not put the Plaintiff in danger of vehicular traffic) and accessible routes from her parked vehicle to the Businesses. Specifically, the accessible parking in front of the old supermarket and RiteAid is limited and lacks the presence of an accessible ramp without the need to traverse into the busy parking lot and put herself in harm's way of vehicular traffic. Moreover, due to series of interior doors being locked at the Subject Premises (due to the closed supermarket), when the Plaintiff parks in certain accessible designated parking spots in front of the entrance of the old supermarket, but needs to patronize one of the Businesses at the westerly end of the Subject Premises, she is forced to travel in her motorized wheelchair through the busy parking lot, while navigating through busy vehicular traffic. This barrier to accessibility is a safety hazard that puts the Plaintiff's health and safety in jeopardy, and discriminates against

---

[1] Plaintiff resides approximately 3 miles from the Gardens at Great Neck and uses the shopping center for a majority of her daily needs.

3

her due to her disability. Moreover, the Subject Premises fails to provide an accessible path of travel and access aisle for all accessible designated parking spots as required under the ADA and local laws. As a result, Plaintiff suffered and continues to suffer an injury in fact. That, Plaintiff continues to desire to visit the Subject Premises in the future to access and enjoy the goods and services offered therein, but continues to be injured in that she is unable to and continues to be discriminated against due to the architectural barriers that remain at the Subject Premises, all in violation of the ADA and NYSHRL.

10. Venue is proper in the Eastern District of New York because the Defendant's acts of discrimination and the Subject Premises is located in this District.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

11. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

12. On or about July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

13. Congress specifically found, *inter alia*, that:[2]

    i. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

    ii. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

---

[2] 42 U.S.C. § 12101(a)(1) – (3), (5), and (9).

    iii.    Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities;

    iv.    Discrimination against individuals with disabilities persists in such critical areas of employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services; and,

    v.    The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

14. Congress explicitly set forth the purpose of the ADA; to wit:[3]

    i.    Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

    ii.    Provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

    iii.    Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

---

[3] 42 U.S.C. § 12101(b) (1)(2) and (4).

15. The congressional legislation provided commercial enterprises with a period of one and a half years from the enactment of the statute to implement the requirements imposed under the ADA.

16. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[4]

17. Pursuant to 42 U.S.C. §1281(7) and 28 C.F.R. §36.104, the Subject Premises, which is subject to this action is a public accommodation because it provides good and services to the public.

18. Upon information and belief, the Subject Premises has begun operations, and/or has undergone substantial remodeling, repairs and/or alterations since January 26, 1992, and/or has sufficient income to make readily achievable accessibility modifications.

19. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA (the "ADAAG").[5]

20. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000.00 or less).[6]

21. The Gardens at Great Neck is a commercial multi-purpose shopping and service center, in which the Businesses that Plaintiff patronizes are located, including but not limited to, RiteAid Pharmacy, Matsuya Sushi, TD Bank, and Starbucks.  Because Plaintiff wishes to access these and other Businesses in one convenient location, she has made numerous visits to the Subject Premises.

---

[4] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).
[5] 28 C.F.R. Part 36.
[6] 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

22. Plaintiff believes she would enjoy the convenience and time savings of accessing the Businesses from a single ADA-compliant parking location.

23. Upon Plaintiff's arrival at the Subject Premises, she learned that because of Defendant's failure to provide an accessible wheelchair ramp immediately adjacent to any ADA-designated parking spots, she must maneuver her wheelchair through a dangerous and often-crowded parking lot in order to access the Businesses.

24. As a result, Plaintiff was unable to enter all of the Businesses of the Subject Premises.

25. Plaintiff uses a wheelchair for mobility and the Subject Premises' parking lot with insufficient ramp access prevented the Plaintiff from accessing the Businesses and this excluded her from taking advantage of the goods and services being offered to the public at large. Plaintiff suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, as a result of these incidents.

26. The Subject Premises is legally required to be, ***but is not***, in compliance with the ADA and/or ADAAG.

27. The Subject Premises is in violation under the ADA, 42 U.S.C. § 12181 *et seq*. and 28 C.F.R. § 36.302 *et. seq.* in that the Defendant is discriminating against the Plaintiff, as a result of the following specific violations, which include, but are not limited to, the following:

    1. In front of the "exit" to the closed supermarket, the access aisle to the ADA designated parking spaces does not provide for an accessible ramp to the ADA designated parking spots without the need to traverse into vehicular traffic. This barrier to access makes it dangerous and difficult for Plaintiff to access the sidewalk from her parked vehicle in that it is only present on the driver's side of the vehicle.

2. In front of the "exit" closed supermarket, the second of the two ADA designated parking spaces does not provide an access aisle adjacent to the second ADA designated parking spot. This barrier to access makes it dangerous and difficult for Plaintiff to access the sidewalk from her parked vehicle.

3. In front of the "entrance" to the closed supermarket, the access aisle to the ADA designated parking spaces does not provide for an accessible ramp to the ADA designated parking spots without the need to traverse into vehicular traffic. This barrier to access makes it dangerous and difficult for Plaintiff to access the sidewalk from her parked vehicle in that it is only present on the driver's side of the vehicle.

4. In front of the "entrance" of the closed supermarket, where two of the ADA designated parking spaces are located, the Defendant has closed and locked the interior doors to the closed supermarket; thereby failing to provide an accessible path of travel at the Subject Premises. This barrier to access makes it dangerous and difficult for Plaintiff to access the Businesses (i.e. Starbucks Coffee) located on the westerly side of the Subject Premises without being required to traverse into the vehicular way and risk getting struck by a vehicle or encounter a barrier to access which stops the Plaintiff from accessing the public accommodations offered at the Subject Premises.

5. In front of RiteAid, the access aisle to the second of the two ADA designated parking spaces does not provide for an accessible ramp to the ADA designated parking spots without the need to traverse into vehicular traffic turning into the Subject Premises.

6. In front of RiteAid, the barrier to access makes it dangerous and difficult for Plaintiff to access the sidewalk from her parked vehicle in that it is only present on the driver's side of the vehicle.

7. In front of RiteAid, the first of the two ADA designated parking spaces does not provide for an access aisle adjacent to the first of two ADA designated parking spots. This barrier to access makes it dangerous and difficult for Plaintiff to access the sidewalk from her parked vehicle.

8. Failure to provide an accessible route from the old supermarket to the Businesses (i.e., Starbucks) located along the westerly side of the Subject Premises in violation of ADAAG Sections 206 and 402.

9. Failure to provide necessary ramps and/or curb ramps to permit individuals with disabilities to access the Businesses from the Subject Premises parking lot in violation of ADAAG Sections 303 and 405.

10. Failure to properly locate ADA-accessible parking spaces in compliance with ADAAG Section 208.3.1.

28. Upon information and belief, a full inspection of the Subject Premises will reveal the existence of other barriers to access. Plaintiff specifically reserves the right to perform such an inspection.

29. As required under the ADA, Plaintiff requires a full inspection of the Subject Premises to determine and have remedied all violations under the ADA. Notice is hereby given that Plaintiff intends to amend the Complaint, if necessary, to include any and all new violations discovered during an inspection and that are not contained in the Complaint.

30. Plaintiff has attempted to access the Subject Premises, but has been precluded from accessing the Subject Premises, because of her disabilities; specifically, Plaintiff was precluded by physical barriers to access, dangerous conditions, and ADA violations existing upon the Subject Premises. These violations, which include but are not limited to those enumerated herein, prohibit Plaintiff from accessing the Subject Premises, and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

31. Remediating the ADA and/or ADAAG violations set forth herein is both technically feasible and readily achievable.

32. Plaintiff intends to visit the Subject Premises, again in the future (immediately upon Subject compliance with an Order of this Court requiring that Defendant remedy the subject ADA violations) in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations offered at the Subject Premises; however, in light of her disability, unless and until the Subject Premises is brought into compliance with the ADA, Plaintiff will remain unable to fully, properly, and safely access the Subject Premises, and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein.

33. As a result of the foregoing, Defendant has discriminated against, and continues to discriminate against the Plaintiff, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Premises. Defendant's discrimination is specifically prohibited by 42 U.S.C. § 12182, *et seq*.

34. Moreover, Defendant will continue to discriminate against Plaintiff, and others similarly situated, until it is compelled by this Court to remove all physical barriers upon the Subject Premises, which violate the ADA and/or ADAAG, including but not limited to those

specifically set forth herein, and to make the Subject Premises, accessible to and usable by persons with disabilities, including Plaintiff.

35. Plaintiff is without adequate remedy at law, and is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendant is required to remove the physical barriers, dangerous conditions, and ADA and/or ADAAG violations that exist upon the Subject Premises, including but not limited to those set forth herein.

36. This Court is vested with authority to grant injunctive relief sought by Plaintiff herein, including entry of an order requiring alteration and modification of the Subject Premises, so as to make it readily accessible to and useable by individuals with disabilities, including but not limited to Plaintiff to the extent required by ADA and/or ADAAG.

37. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay counsel reasonable attorneys' fees, costs, and litigation expenses, all of which are recoverable against the Defendant.[7]

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL

38. Plaintiff re-avers and re-alleges the allegations set forth above, as though fully set forth herein.

39. Plaintiff suffers from various medical conditions that separately and together prevents the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range. Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 296(21).

40. The New York State Human Rights Law provides:

---

[7] 42 U.S.C. §§ 12205, 12117

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation...because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … [8]

41. In 2019, the New York legislature enacted legislation that provides the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". See Executive Law § 300 [effective date: August 12, 2019].

42. The amendment of Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

43. The Subject Premises is a place of public accommodation as defined by the NYSHRL.

44. Plaintiff visited the Subject Premises and encountered architectural barriers as described herein.

45. By maintaining architectural barriers that discriminate against people with disabilities Defendant has, directly or indirectly, refused, withheld, and/or denied to Plaintiff, because of her disability, the accommodations, advantages, facilities or privileges thereof provided at the Subject Premises.

---

[8] NYS Exec. Law § 296 (2) (a).

46. Defendants discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation.

47. Plaintiff has been damaged and will continue to be damaged by this discrimination in an amount to be determined at trial. Plaintiff seeks a judgment pursuant to N.Y. Exec. Law §297, including damages pursuant to § 297(9) thereof.

## ATTORNEYS' FEES AND COSTS

48. Plaintiff has been obligated to retain the undersigned attorneys for purposes of filing and prosecuting this lawsuit. Pursuant to the ADA and NYSHRL, Plaintiff is entitled to have her reasonable attorneys' fees, costs and expenses paid by the Defendant.

49. Plaintiff respectfully requests a judgment pursuant to N.Y. Exec. Law § 297, including damages contemplated by § 297(9).

## DAMAGES

50. Plaintiff demands One Thousand Dollars ($1,000.00) in damages based on Defendant's violation of the NYSHRL.

## INJUNCTIVE RELIEF

51. Plaintiff will continue to experience unlawful discrimination because of Defendant's failure to comply with the ADA and the NYSHRL.

52. Pursuant to 42 U.S.C. § 12188, this Honorable Court is vested with the authority to grant injunctive relief in favor of the Plaintiff, including but not limited to the issuance of an Order to alter the Subject Premises so that it is made readily accessible to, and useable by, all individuals with disabilities, including Plaintiff, as required pursuant to the ADA and NYSHRL, and closing the facilities until the requisite modifications are complete.

53. Therefore, injunctive relief is necessary to order Defendant to alter and modify its place of public accommodation, its policies, business practices, operations and procedures.

54. Injunctive relief is also necessary to make the Subject Premises readily accessible and useable by Plaintiff in accordance with the ADA and NYSHRL.

**WHEREFORE**, Plaintiff hereby demands judgment against the Defendant, and requests the following injunctive and declaratory relief:

a) A declaration that the Subject Premises is owned, leased, operated, controlled and/or administered by Defendant is in violation of the ADA and the NYSHRL;

b) An Order requiring Defendant to evaluate and neutralize its policies, practices and procedures towards individuals with disabilities, for such reasonable time to allow the Defendant to undertake and complete corrective procedures to the Subject Premises;

c) An Order requiring Defendant to undertake and complete a program of corrective remodeling, reconstruction, and other such actions as may be necessary, to remediate and eliminate all ADA and ADAAG violations found at trial to be present upon the Subject Premises;

d) An Order requiring Defendant to alter its facilities and amenities to make them accessible to and useable by individuals with disabilities as required pursuant to Title III of the ADA, the ADAAG, and by the NYSHRL;

e) An Order requiring that the Subject Premises be closed to the general public until such time as it complies with all ADA, ADAAG, and NYSHRL

      requirements, including but not limited to complete remediation of physical barriers to access on the Subject Premises;

f) An Order issuing a permanent injunction ordering Defendant to close the Subject Premises and cease all business until Defendant removes all violations under the ADA and the NYSHRL, including but not limited to the violations set forth herein;

g) Find that Plaintiff is a prevailing party and award reasonable attorneys' fees, costs, disbursements and other expenses associated with this action, in favor of the Plaintiff, and award such pursuant to the ADA and NYSHRL;

h) An award of monetary damages in favor of Plaintiff to the maximum amount permitted by the NYSHRL, as well as, compensatory and punitive damages; and

i) For such other and further relief that this Court deems just, necessary and proper.

Dated:  January 23, 2023　　　　　　　　　　　　Respectfully Submitted,

                                                       **Bashian & Papantoniou P.C.**
                                                      Attorneys for Plaintiff
                                                      500 Old Country Road, Ste. 302
                                                      Garden City, NY 11530
                                                      Tel:    (516) 279-1554
                                                      Fax:   (516) 213-0339

                                                      ***By:*** */s/ Erik M. Bashian, Esq.*
                                                      **ERIK M. BASHIAN, ESQ. (EB7326)**
                                                      eb@bashpaplaw.com

## **VERIFICATION**

GILDA KOHAN, hereby verifies and says that I am the Plaintiff in the above-captioned case. I have reviewed the allegation and they are true and correct to the best of my knowledge, information, and belief.

Dated: 1/25/2023

DocuSigned by:

5E1A2E7930B244D...

Gilda Kohan